**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

DEMERX, INC.,                                    Case No.: 18-14149-RAM

    Debtor.                                       Chapter 11

_____/

**DEBTOR'S EMERGENCY MOTION TO (1) AUTHORIZE**
**SECURED POST-PETITION FINANCING PURSUANT TO**
**11 U.S.C. § 364, LOAN AGREEMENT, AND CONVERTIBLE**
**PROMISSORY NOTE; (2) APPROVE ESCROW AGREEMENT AND FORM**
**OF DIRECTION LETTER; AND (3) REQUEST FOR EXPEDITED HEARING**

(***Emergency Hearing Requested***)

---

**Basis for Expedited Relief**

      The Debtor requests an emergency hearing on this Motion. This is a research and development company. The relief sought is critical to the administration and eventual reorganization of this case in order to permit the Debtor to protect its intellectual property, its most valuable asset. Some of the proposed financing derives from existing shareholders. Without the approval of post-petition financing, the Debtor will not be able to sustain its ordinary course operations and protect its intellectual property, to the detriment of the estate and its creditors. It is therefore imperative that, pending a final hearing on this Motion, the Debtor obtain immediate interim approval to obtain post-petition financing. Approval of the relief requested in this Motion will preserve the value of the Debtor's business enterprise, allow it to continue to operate in the ordinary course, and allow the Debtor the opportunity to engage in an orderly reorganization process. Immediate approval of post-petition financing as set forth in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

---

**Table of Contents**

I.     JURISDICTION AND VENUE ................................................................................. 1

II.    SUMMARY OF RELIEF REQUESTED ................................................................. 1

III.   SUMMARY OF MATERIAL TERMS .................................................................... 3

IV.    BACKGROUND ...................................................................................................... 5

     a.   Description of the Debtor ................................................................................... 5

     b.   Corporate History of the Debtor and Current Officers and Directors ............................ 6

     c.   The Debtor's Shareholders ................................................................................. 7

     d.   Existing Debt ................................................................................................... 8

     e.   The Rights Offering ........................................................................................... 8

     f.    The DIP Loan Facility ....................................................................................... 9

     g.   Default Provisions ............................................................................................ 11

     h.   The Debtor's Post-Petition Financing Needs ..................................................... 12

V.     ARGUMENT AND RELIEF REQUESTED ......................................................... 13

     a.   Secured Post-Petition Debtor-in-Possession Loan Facility ............................... 13

     b.   Approval of Escrow Arrangement, Escrow Agreement and form of Direction Letter .. 15

     c.   Expedited Hearing on the Motion ...................................................................... 17

VI.    CONCLUSION ...................................................................................................... 17

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

The above captioned debtor and debtor-in-possession, DemeRx, Inc. ("Debtor" or "Company" ), by and through its undersigned counsel and pursuant to Sections 105 and 364 of the United States Bankruptcy Code ("Bankruptcy Code"), Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002, 4001, 6003, and 9014, and Local Rules of the Bankruptcy Court for the Southern District of Florida ("Local Rules") 4001-3 and 9013-3, files this emergency motion ("Motion") for approval of a DIP Loan Facility[1]: (1) authorizing, on an interim and final basis, secured priority post-petition financing from various Participant Lenders pursuant to a DIP Loan Agreement and Convertible Promissory Note up to $2,000,000.00; (2) approving the Escrow Agreement between the Debtor and Debtor's Counsel Aaronson Schantz Beiley, P.A. ("ASBPA") relating to the escrow of certain Subscriber Funds and the form of Direction Letter both of which relate to the DIP Loan Facility; and (3) scheduling an expedited preliminary hearing and a subsequent hearing approximately 30 days hereafter on the relief requested herein, and in support thereof, states as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue of this proceeding and this Motion in the Southern District of Florida is proper under 28 U.S.C. §§ 1408 and 1409.

## II.      SUMMARY OF RELIEF REQUESTED

4.      The Debtor is a pharmaceutical development company that is seeking to proceed with an investigatory new drug application ("IND") to the United States Food & Drug Administration (the "FDA") in respect to the drugs Noribogaine and Ibogaine for the treatment of

---

[1] Capitalized terms are defined hereafter in this Motion.

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

opioid and cocaine addiction. The Debtor is ultimately seeking approval of these drugs from the FDA in order to market these drugs as a better alternative to methadone and buprenorphine treatment for opioid addiction.

5.     The Debtor is an unregistered private company with approximately 189 shareholders. As a research and development company, the Debtor has no income but it has extensive research and development expenses.

6.     The Debtor seeks the entry of the proposed Interim Order in the form attached as Exhibit "A", as well as a Final Order providing for the following:

        a.     Authorizing the Debtor to obtain post-petition financing from the Participant Lenders pursuant to the terms and conditions of the DIP Loan Agreement and Convertible Promissory Note attached hereto as Exhibits "B" and "C," respectively, up to $2,000,000.00;

        b.     Subject to an existing pre-petition first lien to Philip Sigel Trustee in the amount of $135,000.00 (the "Sigel Lien") and Carve-Out Expenses (defined *infra*), granting the participant lenders a secured lien on the Debtor's collateral, which includes inventory and patent rights, pursuant to Section 364 of the Bankruptcy Code;

        c.     Granting the participant lenders a priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code;

        d.     Approving the Escrow Agreement and form of Direction Letter associated with the DIP Facility attached to this Motion as Exhibits "D" and "E," respectively; and

        e.     Scheduling an emergency hearing and a final hearing to consider the relief requested in this Motion.

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

### III.    SUMMARY OF MATERIAL TERMS

7.    In accordance with Bankruptcy Rule 4001(c)(1)(B), the Debtor submits the following list and summary of the material terms of the DIP Loan Agreement.

| Material Provision | Summary Description | Location in Loan Agreement |
|---|---|---|
| Purposes of the DIP Loan Facility | Continue Debtor operations, meet working capital requirements, protect IP, secure assets including the supplies of drug products, prosecute the IND, and formulate and proceed with a viable Plan of Reorganization in the Chapter 11 Case. | Page 1 |
| Borrower | DemeRx, Inc., DIP | Page 1 |
| Participant Lenders | The Participant Lenders will fund the DIP Loan Facility. Various Participant Lenders are also Subscribers to the Debtor's pre-petition Offering. | Page 1 |
| Conversion Privilege | At the time of each Participant Lender DIP Loan, the Participant Lender will receive a Conversion Privilege which will require the Debtor, pursuant to the terms of its Plan of Reorganization, and upon confirmation of its Plan of Reorganization, to issue Common Stock equal to ten shares for each dollar lent. In the event of a default event, the shares will not be issued, and the loan will be repaid with interest as a secured debt and/or as an administrative priority debt. | Page 10 |
| Interest Rate | Each DIP Loan shall bear interest at the rate of 6.0% per annum which interest shall accrue up to the date of a default, and thereafter at default rate interest rate of 12.0% per annum. Principal and interest will only be paid in the event of a default. Otherwise, the Participant Lender will exercise its Conversion Privilege. | Page 11 |

3

| | | |
|---|---|---|
| Events of Default | Events of Default are any of the following: (1) Failure of the Debtor to confirm a Plan of Reorganization which provides, *inter alia*, for the reaffirmation of the DIP Loan Agreement including the Conversion Privilege, on or before 18 months after the Company's Chapter 11 Petition date (this deadline may be extended by written agreement of the Parties); (2) Breaches by the Debtor of any representations, warranties, and covenants, as set forth the DIP Loan Agreement; (3) Failure to comply with the Budget, subject to Allowed Variance, as set forth in the DIP Loan Agreement; (4) dismissal or conversion of the Chapter 11 case over the objection of Debtor; or (5) the appointment of a trustee or examiner over the objection of Debtor. | Page 10 |
| Collateral | All obligations under the DIP Loan Facility will be secured by the Participant Lender's Collateral which includes the IP, all inventory, and all rights associated with the IND, now or hereafter acquired, and such liens will be senior in priority to all liens on Debtor's Collateral other than the Sigel Lien and the Carve Out Expenses. Each Participant Lender's lien on the Collateral shall be *pari passu* with each other Participant Lender's lien on the Collateral. | Page 9 |
| Sigel Lien | The existing lien in favor of Philip Sigel Trustee securing debt in the amount of $135,000. | Page 9 |
| Carve-Out Expenses | Carve-Out Expenses are: (i) all allowed and unpaid professional fees and expenses incurred by the Debtor; and (ii) the payment of all fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and all unpaid fees payable to the Clerk of the Bankruptcy Court. | Page 10 |
| Repayment in the Event of Default | In the event of a Default, each Participant Lenders DIP Loan shall be paid with a liquidation preference based upon their secured position and their administrative priority position. | Page 11 |
| Borrowing Limit | Aggregate up to $2,000,000. | Page 12 |
| Liquidation Priority of DIP Loan | To the extent any of the DIP Loan is not paid first from the Collateral, all post-petition debt provided for in the DIP Loan Agreement shall constitute an allowed Chapter 11 Case administrative expense of the Debtor. Such administrative expense shall have administrative priority status subject to Carve Out expenses and shall at all times be senior to the rights of any successor trustee or estate representative in the Chapter 11 Case or any subsequent proceeding or case under the Bankruptcy Code. | Page 11 |

4

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

## IV.    BACKGROUND

### a. Description of the Debtor

8.     The Debtor is a pharmaceutical development company that was incorporated under the laws of the State of Florida on March 1, 2010, for the purpose of acquiring, developing, and commercializing various intellectual property rights (patents, patent applications, know-how, etc.) relating to chemical compounds called Noribogaine and Ibogaine and other similar or related compounds.

9.     Noribogaine is an active metabolite of Ibogaine. Ibogaine is an indole alkaloid[2] which may be effective for treating opioid and cocaine addiction in humans and is used currently in the addict self-help community for this purpose. It is believed that Noribogaine has a lower potential for abuse than buprenorphine, methadone, and other opioids in clinical use for detoxification and treatment of drug addictions. Drug development of Noribogaine and related molecules is based on the seminal work of the CEO, director, and founder, Dr. Deborah Mash, who is considered one of the world's leading experts on Ibogaine. Dr. Mash was a professor of neurology and molecular and cellular pharmacology for 31 years at the Leonard M. Miller School of Medicine, and founder and director of the Brain Endowment Bank, at the University of Miami.

10.     In the United States the Debtor holds six patents and nine patent applications relating to Noribogaine, two patents and eight patent applications relating to Ibogaine, six patents and one patent application relating to synthetic Noribogaine, Noribogaine synthesis, and intermediates, and four patents relating to Noribogaine derivatives. The Debtor has approximately 18 granted foreign patents, and approximately 90 pending foreign applications directed to

---

[2] Alkaloids are a group of naturally occurring chemical compounds that mostly contain basic nitrogen atoms. Indole, also called Benzopyrrole, is a heterocyclic organic compound occurring in some flower oils, such as jasmine and orange blossom, and other matters.

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

Noribogaine synthesis, intermediates, derivatives, and/or uses of Noribogaine, Ibogaine, or related compounds, in countries in Europe as well as in Canada, China, Japan, India, Brazil, and Australia (all aforesaid patents and patent applications, the "IP"). Additionally, the Debtor has commenced the drug approval process with an IND to the FDA.

### b.   Corporate History of the Debtor and Current Officers and Directors

11.     Deborah Mash, Steve Gorlin, and Charles Koob founded the Debtor in 2010, and thereafter the Debtor acquired the IP then held by Dr. Mash. The founding Board of Directors consisted of eight (8) members: Steve Gorlin; Charles E. Koob; Deborah C. Mash, Ph.D.; Franklyn G. Prendergast, M.D., Ph.D.; Maj. Gen. C.A. "Lou" Hennies; Parker H. "Pete" Petit; Bruce Hack; and Steven M. Paul, M.D. The executive officers at that time were Steve Gorlin (Chairman and CEO), Charles E. Koob (Chairman of the Executive Committee and Secretary), Dr. Mash (Vice President – Research and Development and Chief Scientific Officer), Stefan Schwabe MD (COO), John C. Thomas, Jr. (CFO, Treasurer, and Assistant Secretary), and Jeffrey L. Raney, Esq. (Executive Vice President – Administration). Dr. Rudolf Kwan was hired shortly thereafter to serve as President. Dr. Douglas Kramer joined the company as its VP of Regulatory and Clinical Affairs.

12.     In 2013, Lawrence Friedhoff MD was recruited to the Debtor as CEO & President. Other officers at that time included Dr. Mash (Vice President – Research and Development and Chief Scientific Officer), Holger Weis (Chief Operating Officer, Chief Financial Officer, and Treasurer), and Jeffrey L. Raney, Esq. (Executive Vice President – Administration). Holger Weis replaced Stefan Schwabe as COO in late 2012.

13.     In June 2013, due to disagreements with Dr. Friedhoff involving clinical trial designs and plans to conduct a pivotal study in New Zealand instead of the United States, Dr. Mash

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

resigned from the Debtor's Board of Directors. Thereafter, Dr. Friedhoff resigned in 2014, and the then current Board of Directors promoted Holger Weis to President, Chief Operating Officer, and Chief Financial Officer. Holger Weis continued in those positions until his resignation on July 24, 2017.[3]

14.     On July 20, 2017, the holders of a majority of the issued and outstanding shares of the capital stock of the Debtor executed, via proxies, a written consent removing the then current members of the Board of Directors and replaced the Board with Dr. Mash, Ambassador. Hans Hertell Esq., Christopher Hassan, Heather Callendar-Potters, and Richard Serbin, Esq. Mr. Serbin serves as the Executive Chairman of the Board.

15.     Thereafter, Dr. Mash recruited and signed an employment agreement with Dr. Robert Reder, and he is now Vice President for Clinical Research and Development. Dr. Reder is an expert in opioid drugs, having worked at both Purdue Pharma and Endo Pharmaceuticals, and he has substantial experience with the FDA. In September of 2017, Michael Karukin Ph.D. joined the company as its Chief Operating Officer. Dr. Karukin worked for many years at Ivax, and then transitioned to lead the REMS program (Risk Evaluation and Mitigation Strategies) at Teva Pharmaceuticals USA. In 2018, John Thomas returned to the Debtor to serve as its Chief Financial Officer.

c.     **The Debtor's Shareholders**

16.     Pursuant to the Debtor's Articles of Incorporation, as amended, the Debtor was authorized to issue 50,000,000 shares of capital stock, of which 35,000,000 shares were designated as Common Stock ("Common Stock") and 15,000,000 shares were designated as Preferred Stock

---

[3] Holger Weis has commenced an arbitration proceeding with the American Arbitration Association against the Debtor styled *Holger Weis v. DemeRx, Inc.*, Case No. 01-17-0006-8886 relating to an employment dispute. The Debtor believes it possesses defenses and counterclaims against Mr. Weis.

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

("Preferred Stock"). To date, the Debtor has issued 6,803,763 shares of Common Stock, 7,000,000 shares of Series A Preferred Stock, and 3,837,720 shares of Series B Preferred Stock.

### d. Existing Debt

17.     The Debtor's existing debt is comprised basically of: (1) the $135,000 secured obligation to Philip Sigel Trustee; (2) the disputed unsecured claim of approximately $621,000 by the former President Holger Weis; (3) the Debtor's former IP counsel Foley & Lardner LLP disputed unsecured legal fees claim of approximately $712,000; (4) certain unpaid unsecured consulting fees totaling approximately $44,000; (5) certain outstanding research and development related unsecured costs of approximately $250,000; and (6) certain unsecured loans to the company in the amount of approximately $120,000. No taxes are due and owing.

### e. The Rights Offering

18.     In order to fund the costs of continuing to protect the Debtor's IP, and in order to continue to proceed with the IND, on November 17, 2017, the Debtor entered into a Rights Offering which offered up to existing shareholders up to 6,000,000 shares, but not less than 4,000,000 shares, of Common Stock at $.25 a share (the "Initial Offering"). On January 26, 2018, the Debtor supplemented the Initial Offering by removing the requirement for a minimum sale of 4,000,000 shares and further eliminating the requirement that subscribers be limited to existing Shareholders (the "Supplemental Offering," and along with the Initial Rights Offering, the "Offering").

19.     Pursuant to the Offering, 50 subscribers (each a "Subscriber" and collectively the "Subscribers") remitted funds to the Debtor totaling $241,421.07 (the "Subscriber Funds"), which funds remain in escrow and are being held by Chapter 11 counsel for the Debtor at Aaronson Schantz Beiley, P.A. ("ASBPA"), pursuant to an Escrow Agreement which is attached hereto as

8

Exhibit "D." The Subscriber Funds in escrow from the Offering are insufficient to fund the Debtor's operations for the time period necessary to achieve FDA IND approval and the Debtor has not accessed the Subscriber Funds.

**f.  The DIP Loan Facility**

20.    As of this time, the Debtor is virtually out of money. However, there are numerous parties, many of them existing shareholders, and some of them who are existing Subscribers, who remain very interested in the Debtor pursuing its IP for eventual FDA approval. Through this Motion, the Debtor seeks authorization for a post-petition Debtor-in-Possession credit facility in an aggregate amount of up to $2,000,000 (the "DIP Loan Facility") in order to continue operations, meet its working capital requirements, protect its IP, secure assets, including the supplies of drug products, prosecute the IND, and to formulate and proceed with a viable Plan of Reorganization in the Chapter 11 Case.

21.    The DIP Loan Facility will be funded on a continuing and ongoing basis by participant lenders (the "Participant Lenders"). The Participant Lenders will be (a) Subscribers who direct the Escrow Agent pursuant to a direction letter (the "Direction Letter," Exhibit "E") to transfer the Subscriber's funds remaining in escrow from the Offering, to the DIP Loan Facility; (b) Subscribers who may loan funds to Debtor in addition to their Subscription funds remaining in escrow under the Offering; and (c) non-Subscribers who desire to loan funds, and eventually convert the loan into Company stock.

22.    To secure all obligations under the DIP Loan Facility, the Debtor proposes to provide to the various Participant Lenders, pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, valid, perfected, and enforceable liens (the "Post-Petition Security Interest") on all of the Debtor's assets, whether such assets are currently owned or hereafter acquired, tangible

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

or intangible, wherever located including, without limitation, all proceeds, products, rents and profits thereof (the "Collateral"). The Debtor's Collateral consists basically of Ibogaine and Noribogaine inventory, patents, and patent applications. There are presently no security interests on the Debtor's Collateral other than the existing lien in favor of Philip Sigel Trustee securing debt in the amount of $135,000 (the "Sigel Lien"). The Post-Petition Security Interest on Debtor's Collateral being granted to Participant Lenders will be subordinate only to the Sigel Lien, and carve out expenses (the "Carve Out Expenses"). Carve Out Expenses are: (i) all allowed and unpaid professional fees and expenses incurred by the Debtor in the course of this case; and (ii) the payment of all fees required to be paid to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and all unpaid fees payable to the Clerk of the Bankruptcy Court.

23.    Under the DIP Loan Facility, as each Participant Lender loans funds to the Debtor, the Participant Lender will be issued a conversion privilege ("Conversion Privilege") which shall be set forth in the Promissory Note, and which will mature upon plan confirmation (11 U.S.C. § 1145(a)(2)) and will be exercised as follows: Providing that the Debtor's Plan of Reorganization (the "Plan") will contain a provision reaffirming the DIP Loan Facility and providing for the issuance of Common Stock in satisfaction of the payment of the Participant's Loan, on the effective date of the Plan, the Debtor shall issue ten shares of Common Stock for each dollar of Participant Loan (the "Stock Issuance"). The Stock Issuance shall be pursuant to Section 1145 of the Bankruptcy Code which exempts the Stock Issuance from federal and state securities registration laws.

24.    The only way that the Debtor may access this DIP Loan Facility is to provide Conversion Privilege rights at a ratio of ten shares to the dollar. The Offering, which was at four

10

shares to the dollar, was ineffective and woefully insufficient to fund the Debtor's continuing operations.

### g. **Default Provisions**

25.      The Debtor will be in default under the DIP Loan Facility in respect to its obligations for Stock Issuance if it:

      a.      Fails to confirm a Plan of Reorganization on or before 18 months after the Company's Chapter 11 Petition date;

      b.      Fails to provide in its Plan for the reaffirmation of the DIP Loan Agreement including the Conversion Privilege in favor of the Participant Lenders;

      c.      Breaches any representations, warranties, and covenants, as set forth the DIP Loan Agreement;

      d.      Fails to comply with the Budget, subject to Allowed Variance, as set forth in the DIP Loan Agreement; or

      e.      Over the objection of Debtor, the Bankruptcy Court either dismisses or converts the Chapter 11 case under Section 1112 of the Bankruptcy Code or appoints a trustee or examiner.

26.      In the event of a default, the Debtor will be obligated to satisfy all Participant Lenders by payment of cash with accumulated interest at 6% per annum (from the date of the Participant Lender loan) until default. After default, the obligation shall accrue thereafter at the default interest rate of 12% per annum.

27.      In the event of a Default, each Participant Lender's DIP Loan shall be repaid with a liquidation preference based upon their secured position and their administrative priority position. As indicated elsewhere in this Motion, repayment to the Participant Lenders is secured

11

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

by a first lien on all of the Company's assets pursuant to 11 U.S.C. § 364(a) and (c) subject only to the Sigel Lien and the Carve Out. As well the Participant Lenders have an administrative priority lien subject only to the Carve Out.

28.     Many of the Subscribers to the Offering have indicated their intention to participate *pro rata* in the DIP Loan Facility as Participant Lenders by agreeing to waive their Offering subscription rights and direct the transfer of their Subscriber Funds to the DIP Loan Facility. The DIP Loan Facility will be funded by numerous Participant Lenders, some of whom were Subscribers to the Offering and some of whom are not Subscribers to the Offering. The Subscribers will direct the transfer of their Subscriber Funds either to be used in the DIP Loan Facility or to be returned to each Subscriber pursuant to the Direction Letter attached hereto as Exhibit "E".

29.     The DIP Loan Facility is critical to the survival of the Debtor, and the Debtor's ability to continue operations, meet its working capital requirements, protect its IP, secure assets, including the supplies of drug products, prosecute the IND, and to formulate and proceed with a viable Plan of Reorganization in the Chapter 11 Case.

### h.     The Debtor's Post-Petition Financing Needs

30.     Through this Motion, the Debtor seeks interim and final authorization from this Court to borrow a maximum of $2,000,000 from various Participant Lenders, some of whom have already remitted funds to the Debtor to hold in escrow in connection with the Offering and desire that their Subscription Funds be converted into DIP Loan Facility funds. The Debtor also seeks approval of the Escrow Agreement and form of Direction Letter attached hereto relating to the escrowing and transfer of Subscriber Funds.

31.     Absent the ability to immediately use the DIP Loan Facility funds, the Debtor will be unable to protect its IP, including the payment of periodic patent annuities. Additionally,

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

without the DIP Loan Facility, the Debtor will be unable to continue operations, meet its working capital requirements, secure assets, including the supplies of drug products, prosecute the IND, and formulate and proceed with a viable Plan of Reorganization in the Chapter 11 Case.

32.    The authority sought in this Motion is for the Debtor to continue to make payments in line with the proposed budget ("Budget") attached hereto as Exhibit "F." Any deviation from a proposed line item in the Budget of more than 10% will only be paid upon Court approval (the "Allowed Variance").

## V.    ARGUMENT AND RELIEF REQUESTED

### a.    Secured Post-Petition Debtor-in-Possession Loan Facility

33.    The Debtor seeks authority pursuant to § 364(c)(1) and (3) of the Bankruptcy Code to borrow up to $2,000,000 from Participant Lenders under the terms and conditions of the DIP Loan Agreement and the Secured Promissory Notes ("DIP Loans").

34.    Despite good faith efforts, the Debtor has not been able to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an ordinary administrative expense, or unsecured credit allowable under Section 364(a) or (b) of the Bankruptcy Code.

35.    The Participant Lenders are willing to provide to the Debtor the DIP Loan subject to the conditions set forth in the proposed Interim Order providing for the Conversion Privilege, and providing for the security interests and liens pursuant to Sections 364(c)(1) and (3) in the event of a default under the terms of the DIP Loan.

36.    The Debtor has negotiated with the Participant Lenders at arms' length and in good faith with respect to the proposed DIP Loans. But for the Conversion Privilege and the security

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

interests, liens, and other protections afforded the Participant Lenders pursuant to the proposed

Interim Order, the Participant Lenders would not agree to provide the DIP Loans.

37.     The Debtor submits that the terms and condition of the DIP Loans, taken as whole,

are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent

business judgment consistent with its fiduciary duties.

38.     Section 364(c) of the Bankruptcy Code provides as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

39.     Pursuant to Section 364 of the Bankruptcy Code, a debtor may, in the exercise of

its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit

and the borrowing is in the best interests of the estate. *See* 11 U.S.C. Section 364(c); *In re Ames

Dep't Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts

"permit debtor[s]-in-possession to exercise their basic business judgment consistent with their

fiduciary duties").

40.     To satisfy the standards of Section 364 of the Bankruptcy Code, a debtor is not

required to seek credit from every possible source: "the statute imposes no duty to seek credit from

every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed.

Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Rather, a debtor

need only demonstrate "by a good faith effort that credit was not available without" the protections

of Section 364(c). *Id.*; *see also In re Ames*, 115 B.R. 38, 40 (Bankr. S.D.N.Y. 1990). Where there

14

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing" *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

41.     The Debtor has satisfied the requirements of Sections 364(c) because, under current circumstances, it is unable to obtain credit otherwise.

42.     The DIP Loan Facility described herein is the best and only financing available to the Debtors at this time and is necessary to preserve the value of the Debtor's assets, including its IP, and is in the best interest of the Debtor's estate and its creditors. Accordingly, the Debtors submit that the Interim Order should be entered on an emergency basis pending a final hearing.

**b.     Approval of Escrow Arrangement, Escrow Agreement and form of Direction Letter**

43.     The Debtor seeks approval of the proposed escrow arrangement, attached Escrow Agreement and form of Direction Letter.

44.     As indicated, *supra*, certain Subscribers remitted Subscriber Funds to the Debtor totaling $241,421.07 in connection with a failed Rights Offering. Such Subscriber Funds remain property of each individual Subscriber and are being held by ASBPA as Escrow Agent pursuant to the Escrow Agreement.

45.     The Escrow Agreement provides, *inter alia*, that:

a.     Escrow Agent may rely on the contents of the Subscriber Information (as defined in the Escrow Agreement) as provided to Escrow Agent by the Debtor for purposes of discharging its obligations in good faith under the Escrow Agreement;

b.     The escrow of the Subscriber Funds need not be in a separate bank account but may be deposited in Escrow Agent's existing Trust Account, and the escrow may be placed in a non-interest-bearing trust account

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

c.      The Debtor shall deliver to each Subscriber a Direction Letter in form attached to the Escrow Agreement and attached hereto (Exhibit "D"), and pursuant to each Direction Letter, each Subscriber shall instruct the Debtor and the Escrow Agent to either (1) return all Subscription Funds from the Subscriber back to the Subscriber in the amount subscribed, or (2) deliver all Subscription Funds received from the Subscriber, to the Debtor under the DIP Loan facility;

d.      Escrow Agent will be entitled to rely on the Direction Letters received from each Subscriber in connection with the release of any funds from escrow;

46.      In addition, the Escrow Agent will receive and hold the Escrow under the following additional terms:

a.      If the Court enters an order denying the DIP Loan Facility within the first 45 days of the Chapter 11 Case, which is not the subject of an appeal, unless directed otherwise by a Subscriber in writing, Escrow Agent shall deliver the Subscription amount received to each Subscriber in the amount subscribed. If directed by a Subscriber to retain possession of the Subscription amount in escrow, Escrow Agent may, at its discretion and for any reason whatsoever, abide by the Subscriber's direction and retain the funds in escrow, or return the funds to the Subscriber;

b.      If the Court enters an order approving the DIP Loan facility within 45 days of the Petition Date pursuant to a finding that the Participant Lenders are extending credit in good faith pursuant to Section 364(e) of the Bankruptcy Code, Escrow Agent will abide by the Direction Letter of each Subscriber, who shall direct the Debtor and the Escrow Agent in writing to either (1) deliver all Subscription proceeds received by the Debtor to the Subscriber in the amount

16

subscribed, or (2) deliver all subscription proceeds received by the Debtor with respect to any subscriber, to the Debtor under the DIP Loan facility.

47.     The Escrow Agreement includes various other housekeeping matters, such as (a) that the Escrow Agent may rely upon delivery by U.S. postal service; (b) that the Escrow Agent may have delivery made to the Subscriber at the Subscriber's disclosed address, and (c) that the Escrow Agent will seek compensation for escrow services as part of its Chapter 11 counsel fees.

### c.     Expedited Hearing on the Motion

48.     Pursuant to Bankruptcy Rule 4001(c)(2), a final hearing on a motion to obtain post-petition financing may not be commenced earlier than 14 days after service of the motion. The Court, however, may conduct a preliminary hearing before the expiration of such 14-day period to authorize the post-petition financing to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

49.     Accordingly, the Debtor requests that the Court conduct a preliminary hearing on this Motion at the Court's earliest available date and a final hearing on this Motion on or before May 1, 2018 in order to avoid the immediate and irreparable harm that would be caused by the Debtor's inability to protect its IP.

## VI.     CONCLUSION

50.     The Debtor is in immediate need of the post-petition financing sought herein to continue operations, meet its working capital requirements, protect its IP, secure assets including the supplies of drug products, prosecute the IND, and to formulate and proceed with a viable Plan of Reorganization in the Chapter 11 Case. Without immediate relief, by way of approval of the DIP Loan Facility with the Conversion Privilege, the Debtor will suffer irreparable harm, may lose critical IP, and may be unable to reorganize.

17

WHEREFORE, the Debtor, DemeRx, Inc., respectfully requests an Order from this Court (1) authorizing the Debtor to obtain post-petition financing pursuant to the DIP Loan Agreement, (2) approving the Escrow Agreement and form of Direction Letter, and (3) setting an expedited hearing on the relief requested herein, and for any other and further relief that this Court deems just and proper.

Respectfully submitted,

**Aaronson Schantz Beiley P.A.**

/s/ Geoffrey S. Aaronson
Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
gaaronson@aspalaw.com
Lawrence M. Schantz, Esq.
Florida Bar No. 143910
lschantz@aspalaw.com
Tamara D. McKeown, Esq.
Florida Bar No.: 773247
tmckeown@aspalaw.com
Samuel J. Capuano, Esq.
Florida Bar No. 90946
scapuano@aspalaw.com
Miami Tower
100 SE 2nd Street, Suite 2700
Miami, Florida 33131
Ph: 786.594.3000
Fax: 305.424.9336
*Attorneys for Debtors, Application Pending*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished on April 9, 2018 by CM/ECF to all electronic notice parties and on April 10, 2018 via U.S. Mail to all parties on the attached service list.

/s/ Geoffrey S. Aaronson
Geoffrey S. Aaronson, Esq.

```
Label Matrix for local noticing      DemeRX, Inc.                         AFCO
113C-1                                1951 NW 7th Avenue, Suite 300        5600 North River Road, Suite 400
Case 18-14149-RAM                     Miami, FL 33136-1112                 Rosemont, IL 60018-5187
Southern District of Florida
Miami
Mon Apr  9 19:20:23 EDT 2018

Advanced Technology Consulting Group  Altreos Research Partners            Arrow Pharma Services LLC
12555 Biscayne Blvd., PMB 901         50 Wanda Road                        CMC
North Miami, FL 33181-2522            Toronto, ON M6P 1C6                  1381 Sherry Drive
                                                                           Portage, MI 49024-4234


BG Pharmaceutical Consulting LLC      Berger Singerman, LLP                CIC Miami
1310 Scott Avenue                     350 E. Las Olas Blvd., Suite 1000    1951 NW 7th Avenue, 6th Floor
Winnetka, IL 60093-1463               Fort Lauderdale, FL 33301-4215       Miami, FL 33136-1104


Coffey Burlington, PL                 Darpo Consulting                     Deborah C. Mash, Ph.D.
2601 S Bayshore Drive, PH 1           Mangan AB, Trasthagen 11             DemeRx, Inc.
Miami, FL 33133-5460                  SE 181 41 Lidingo                    1951 NW 7th Avenue, Suite 300
                                      Sweden                               Miami, FL 33136-1112


Dr. Cynthia Kuhn                      Foley & Lardner, LLP                 Foley & Lardner, LLP
Professor of Pharmacology             555 South Flower Street, Suite 3500  975 Page Mill Road
Duke University                       Los Angeles, CA 90071-2411           Palo Alto, CA 94304-1051
2821 Wade Road
Durham, NC 27705-5622


Gerald Swiss                          Holger Weis                          Iron Mountain, Inc.
P.O. Box 9916                         1212 S.E. 11th Street                745 Atlantic Avenue, Floor 10
Rancho Santa Fe, CA 92067-4916        Fort Lauderdale, FL 33316-1337       Boston, MA 02111-2735


MPI Research, Inc.                    Michael Karukin
54943 N. Main Street                  DemeRx, Inc.
Mattawan, MI 49071-8353               1951 NW 7th Avenue, Suite 300
                                      Miami, FL 33136-1112
```



```
Office of the US Trustee              Philip Sigel, Trustee                Psychogenics
51 S.W. 1st Ave.                      8818 S.W. 72nd Street #F136          215 College Rd
Suite 1204                            Miami, FL 33173-3534                 Paramus, NJ 07652-1419
Miami, FL 33130-1614


RGH Pharma Consulting                 S.A. Ajimoto OmniChem N.V. (Omnichem)  Sagittarius Intellectual Property LLP
94 Granville Way                      Cooppalllaan 91, Ind. Zone 7          Three Globeside
Exton, PA 19341-2787                  B-9230 Wettern, Belgium               Fieldhouse Lane
                                                                            Marlow, Bucks
                                                                            SL7 1HZ, UK


Steve Gorlin                          Syneos Health                        Thermo Fisher Scientific Inc
Gorlin Companies                      3201 Beechleaf Court, Suite 600      63556 Nels Anderson Road 2
600 E. Hopkins Avenue                 Raleigh, NC 27604-1500               Bend, OR 97701
Aspen, CO 81611-1949
```

Thermo Fisher Scientific Inc FKA Patheon
63556 Nels Anderson Road 2
Bend, OR 97701

Vault Rooms, Inc (Vroom)
1617 Park Place Ave, Suite 110-VR
Fort Worth, TX 76110-1300

Womble Bond Dickinson LLP
Atlantic Station
271 17th Street, NW, Suite 2400
Atlanta, GA 30363-6215

ZTR Enterprises, LLC
2928 Rockingham Drive, NW
Atlanta, GA 30327-1231



The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

(u)Zenith Technologies
156 Frederick Street
Dunedin 9016, NZ

End of Label Matrix
Mailable recipients    34
Bypassed recipients     2
Total                  36