

**ORDERED in the Southern District of Florida on April 18, 2018.**

Robert A. Mark, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

In re:

DEMERX, INC.,                                             Case No.: 18-14149-RAM
                                                          Chapter 11
      Debtor.
_____/

**INTERIM ORDER AUTHORIZING SECURED POST-PETITION
FINANCING PURSUANT TO CONVERTIBLE PROMISSORY NOTE AND
LOAN AGREEMENT AND 11 U.S.C. § 364; APPROVING ESCROW AGREEMENT
AND FORM OF DIRECTION LETTER; AND SCHEDULING FINAL HEARING**

      **THIS CAUSE** came before the Court for preliminary hearing upon the *Debtor's Emergency Motion To (1) Authorize Secured Post-Petition Financing Pursuant To 11 U.S.C. § 364, Loan Agreement and Convertible Promissory Note; (2) Approve Escrow Agreement and Form of Direction Letter; and (3) Request for Expedited Hearing* [ECF No 5] (the "Motion"). The Court, having reviewed the Motion, having considered the evidence and testimony of the CEO Dr. Deborah Mash at the preliminary hearing on April 12, 2018 ("Preliminary Hearing") and the representations of counsel for DemeRx, Inc. ("Debtor") and having heard other parties in interest,

and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law (to the extent any findings of fact constitutes conclusions of law, they are adopted as such and vice versa):

## BACKGROUND

1. On April 9, 2018 (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") by filing a voluntary petition for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code.

2. The Debtor is operating its business and managing its affairs as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee, examiner, or creditors' committee has been appointed in the Debtor's Chapter 11 Case.

3. The Debtor is a pharmaceutical research and development company formed for the purpose of acquiring, developing, and commercializing various intellectual property rights (patents, patent applications, know-how, etc.) relating to a chemical compounds called ibogaine and noribogaine and other similar or related compounds.

4. The Debtor has been unable to obtain credit on its own and cannot qualify for conventional financing.

5. Prior to the Petition Date, in order to fund the costs of continuing to protect the Debtor's IP,[1] and in order to continue to proceed with an Investigational New Drug Application ("IND") to the U.S. Food & Drug Administration, on November 17, 2017, the Debtor entered into a Rights Offering to existing shareholders of up to 6,000,000 shares, but not less than 4,000,000 shares, of Common Stock at $.25 a share (the "Initial Offering"). On January 26, 2018, the Debtor supplemented the Initial Offering by removing the requirement for a minimum sale of 4,000,000

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

shares and further eliminating the requirement that subscribers be limited to existing Shareholders (the "Supplemental Offering," and along with the Initial Rights Offering, the "Offering").

6. In connection with the Offering, 50 subscribers (each a "Subscriber") remitted funds to the Debtor totaling $241,421.07 which funds remain in escrow and are being held by Chapter 11 counsel for the Debtor at Aaronson Schantz Beiley, P.A. pursuant to an Escrow Agreement. These funds are insufficient to continue to support the Debtor's operations for more than a limited amount of time.

7. Certain of the Subscribers desire to participate in the Debtor's post-petition Debtor-in-Possession credit facility (the "DIP Loan Facility") which provides for an aggregate amount of up to $2,000,000, as fully detailed in the Secured Debtor-in-Possession Loan Agreement ("DIP Loan Agreement") attached to the Motion. The DIP Loan Facility will be funded by numerous lenders ("Participant Lenders"), some of whom were Subscribers to the Offering and some whom may not be Subscribers to the Offering, each of whom will receive a Secured Convertible Promissory Note and the DIP Loan Agreement (collectively, the "DIP Loans"). Some of these Participant Lenders are existing shareholders and some may not be existing shareholders.

8. Absent an Event of Default, as set forth in the DIP Loans, the Participant Lenders will forego repayment of their DIP Loans and instead receive, pursuant to the Debtor's Chapter 11 Plan of Reorganization, shares of common stock in the Debtor at the rate of ten shares of common stock for every $1.00 in DIP Loan funds that are funded. In the event of a default as set forth in the DIP Loans, the Convertible Promissory Note will be paid pursuant to a liquidation preference.

9. A default under the DIP Loan Agreement and the Convertible Promissory Note is defined as: (a) Failure of the Debtor to confirm a Plan of Reorganization which provides, *inter alia,* for the reaffirmation of the DIP Loan Agreement including the right to convert the DIP Loan

3

to equity at the rate of ten shares for each dollar loaned (the "Conversion Privilege"), on or before 18 months after the Company's Chapter 11 Petition date (this deadline may be extended by written agreement of the Parties); (b) Breaches by the Debtor of any representations, warranties, and covenants, as set forth the DIP Loan Agreement; (c) Failure to comply with the Budget, subject to Allowed Variance, as set forth in the DIP Loan Agreement; (d) dismissal or conversion of the Chapter 11 case over the objection of Debtor; or (e) the appointment of a trustee or examiner over the objection of Debtor.

10. In the event of a default, the participant lenders' would have a liquidation preference where they would be paid first, from the Collateral (the IP, all inventory, and all rights associated with the IND, now or hereafter acquired, subject only to an asserted first lien securing a $135,000 obligation to Philip Sigel, Trustee), and a Carve Out (for all allowed and unpaid professional fees and expenses incurred by the Debtor; payment of all fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and all unpaid fees payable to the Clerk of the Bankruptcy Court); and second, as an administrative priority claim subject to the same Carve Out.

11. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12. An immediate and critical need exists for the Debtor to obtain post-petition financing in order to operate its businesses, protect its assets including its intellectual property, to pay the costs of administration of the estate, and to satisfy other working capital and operational needs.

13. The Debtor is unable to obtain financing: (i) in the form of unsecured credit allowable under § 364(a) or (b) of the Bankruptcy Code or as an administrative expense pursuant to § 503(b)(1) of the Bankruptcy Code, or (ii) on terms more favorable than those offered by the Participant Lenders in the DIP Loan Agreement.

14. The terms of the DIP Loan Facility are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties. The Debtor was unable to obtain sufficient financing to continue its business operations from a pre-petition private placement offering, which offered common stock on a four to one dollar basis.

15. Based on the record before the Court, the terms of the proposed DIP Loan Agreement and the proposed Secured Convertible Promissory Note , the DIP Loans that will be made or provided to the Debtor by the multiple Participant Lenders will be in "good faith," as that term is used in § 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, the estate and its creditors. Based on the record presented to the Court by the Debtor, it appears Participant Lenders are entitled to a finding of "good faith" pursuant to § 364(e) of the Bankruptcy Code, and entitled to the full protection and benefits of the provisions of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision herein is hereafter vacated, reversed, or modified, on appeal or otherwise.

16. It is in the best interests of the Debtor that it be allowed to finance operations under the terms and conditions set forth in the DIP Loan Agreement and the Convertible Secured Promissory Notes in order to preserve and protect Debtor's IP and its ability to go forth with its intended IND. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order.

17. The Debtor has provided proper and adequate notice of the Motion, the Preliminary Hearing, and the potential entry of this Interim Order.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

18. The Motion is GRANTED on an interim basis. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled. This Interim Order shall become effective immediately upon its entry and shall be valid and binding on all parties in interest.

19. The Debtor is hereby authorized to borrow funds, incur debt, reimbursement obligations, and other obligations, and perform its obligations in accordance with the terms and conditions of the DIP Loan Agreement and this Interim Order. Prior to the entry of a final order approving the DIP Loan Facility (the "Final Order"), the Debtor may agree to nonmaterial, *de minimis* amendments, modifications, and supplements to the DIP Loan Agreement, so long as disclosed at final hearing without further notice to any party.

20. Under this Interim Order and pending Final Hearing, the DIP Loan Facility shall not be greater than $400,000 (the "Interim Amount") of the $2,000,000 of total financing (inclusive of the $400,000 Interim Amount) requested. Pending final hearing, the Debtor may use up to $250,000 of the Interim Amount pursuant to its Budget.

21. Upon entry of this Interim Order and subject to the DIP Loan Agreement and the funding of the Interim Amount, the DIP Loan Agreement and any related agreements shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor and any other parties in interest. No obligation, payment or transfer under this Interim Order or the DIP Loan Agreement shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code

or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

22. To secure all obligations under the DIP Loan Facility, the Participant Lenders are granted, pursuant to Section 364(c) of the Bankruptcy Code, valid, perfected, and enforceable liens (the "Post-Petition Security Interest") on all of the Debtor's assets, whether such assets are currently owned or hereafter acquired, whether real or personal, tangible or intangible, wherever located including, without limitation, all proceeds, products, rents and profits thereof (the "Collateral"); provided, however, that the Collateral shall not include post-petition avoidance actions under Chapter 5 of the Bankruptcy Code, claims, if any, under the Debtor's director and officer liability policy, and the proceeds of the foregoing. The Post-Petition Security Interest on Debtor's Collateral being granted to Participant Lenders shall be subject only to the lien in favor of Philip Sigel Trustee securing debt in the amount of $135,000 (the "Sigel Lien") and Carve Out Expenses. Carve-Out Expenses are: (a) all allowed and unpaid professional fees and expenses incurred by the Debtor; (b) the payment of all fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and (c) all unpaid fees payable to the Clerk of the Bankruptcy Court. Any Participant Lender seeking to foreclose or otherwise enforce rights upon or against the Collateral must first seek stay relief in this Court.

23. All post-petition debt incurred by the Debtor pursuant to the DIP Loan Agreement ("Post-Petition Obligations") shall also constitute an allowed administrative expense of the Debtor in the Chapter 11 Case. Such administrative expense shall have priority status, subject only to the Sigel Lien and the Carve-Out Expenses and shall at all times be senior to the rights of any successor trustee or estate representative in the Chapter 11 Case or any subsequent proceeding or case under the Bankruptcy Code.

24. Each Participant Lender's lien on the Collateral shall be *pari passu* with each other Participant Lender's lien on the Collateral.

25. The Debtor will use the proceeds of the DIP Loans to fund operations and pay expenses incurred during the administration of the Debtor's chapter 11 case in accordance with and as set forth in the Budget, attached hereto as "Exhibit 1." The Debtor shall be permitted to make expenditures that exceed by up to 10% the amount provided for in any line item of the Budget for any month (the "Allowed Variance"). To the extent the Budget includes professional fees and expenses, such fees and expenses may be paid when allowed by the Bankruptcy Court.

26. Pursuant to the Escrow Agreement attached as Exhibit "D" to the Motion, the Subscription Funds previously provided the Debtor pursuant to the pre-petition failed Rights Offering remain in the trust account of Aaronson Schantz Beiley P.A. ("ASB"). The existing Subscribers may direct the transfer of their Offering Subscriptions to the DIP Loan Facility by executing the Direction Letter (Exhibit E to the Motion) and delivering same to ASB (as set forth in the Direction Letter). The form of Direction Letter and Escrow Agreement, Exhibits "D" and "E," are approved.

27. Based on the good faith findings set forth in this Interim Order and in accordance with § 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Interim Order or the DIP Loan Agreement or any related agreement are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any claim authorized or created hereby or any Post-Petition Obligations incurred hereunder.

28. The liens granted by this Order are final and enforceable, and do not require any further filing or recording of documents with the state or federal authorities. Notwithstanding, to

the extent it desires, Debtor is authorized, and the automatic stay imposed by § 362 of the Bankruptcy Code is hereby lifted, to perform all acts, to make, execute and deliver all instruments and documents it may choose to further establish and enforce the provisions of this Interim Order.

29. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order converting this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

30. Promptly after the entry of this Interim Order, the Debtor shall serve on all interested parties this Interim Order, and a notice of the final hearing to be held on at April 30, 2018 at 10:00 a.m. to consider entry of the Final Order ("Final Hearing"). All creditors and parties in interest shall have up to two business days prior to the Final Hearing to file an objection, if any, to the continued authority of the Debtor to obtain funds in accordance with the terms of the DIP Loan Agreement, as amended, modified and supplemented by this Interim Order. Objections must be in writing and shall be filed with this Court and served upon the attorneys for the Debtor: Geoffrey S. Aaronson, Esq., at gaaronson@aspalaw.com, and Samuel J. Capuano, Esq., at scapuano@aspalaw.com.

31. In the event that any provision of this Interim Order conflicts with any term of the DIP Loan Agreement or any related document, this Interim Order shall govern.

32. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms and, if necessary, to determine any disputes arising with respect to this Interim Order.

***

Submitted by:
Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
Samuel J. Capuano, Esq.
Florida Bar No. 90946
Aaronson Schantz Beiley P.A.
100 SE 2nd Street, 27th Floor
Miami, Florida 33131
Telephone: 786-594-3000

Telefax: 305-424-9336
gaaronson@aspalaw.com
scapuano@aspalaw.com
*Proposed Attorneys for Debtors*

Attorney Aaronson is directed to serve a copy of this Order on all interested parties and to file a proof of service within three days of entry of the Order.